IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS HUBBARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 05-CV-389 |
| | ) |
| AMERIQUEST MORTGAGE COMPANY, | ) Judge Robert M. Dow Jr. |
| DEUTSCHE BANK NATIONAL TRUST and | ) |
| AMC MORTGAGE SERVICES, INC. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas Hubbard ("Hubbard") filed an amended complaint against Defendants Ameriquest Mortgage Company ("Ameriquest"), Deutsche Bank National Trust ("Deutsche Bank"), and AMC Mortgage Services, Inc. ("AMC") alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), seeking rescission of his mortgage and statutory damages. This matter is now before the Court on Plaintiff's renewed motion for summary judgment [103]. For the reasons set forth below, that motion is granted as to Ameriquest and Deutsche Bank and denied as to AMC. Also before the Court is Defendants' motion to strike portions of Plaintiff's renewed motion for summary judgment [113]. That motion is denied as moot, although the Court will disregard the portions of Plaintiff's submissions that Defendants find objectionable.

**I.    Background**

This case was originally assigned to Judge Mark Filip. While still before Judge Filip, Plaintiff moved for summary judgment on liability and Defendants filed a cross-motion for summary judgment. Judge Filip struck those motions to allow for final determination of a case

then before the Seventh Circuit that potentially was dispositive of one of the principal issues in this case.[1] As expected, the Seventh Circuit provided instruction on the issue in *Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525 (7th Cir. 2007), and Plaintiff subsequently filed a renewed motion for summary judgment.

## A. Local Rules on Summary Judgment

The Court takes the relevant facts from the Plaintiff's Local Rule 56.1 ("L.R. 56.1") statements ("Pl. SOF") and Defendants' Response ("Def. Resp. SOF"). The Court construes the facts and draws all reasonable inferences in Defendants', as the non-movant, favor. See *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004).

L.R. 56.1 requires that statements of fact contain material allegations and the factual allegations must be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. *See* L.R. 56.1(a), (b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The Court disregards any additional statements of fact contained in a party's response rather than its statement of additional facts. See*, e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995)).

---

[1] MINUTE entry before Judge Mark Filip: The Court strikes without prejudice Plaintiff Thomas Hubbard's motion for summary judgment on liability (D.E. 62) and Defendants' cross-motion for summary judgment. (D.E.72.) The parties are directed to notify the Court when the Seventh Circuit resolves the appeal in *Hamm v. Ameriquest Mortgage Co.*, Seventh Circuit Appeal No. 05 C 3984 (District Court case No. 05 C 227, 2005 WL 2405804 (N.D. Ill. Sept. 27, 2005)), in which a decision is expected shortly. At that time, the parties may move to have their motions reinstated, although the briefs likely will need to be supplemented to address the applicable Seventh Circuit teaching.

B.     **Pertinent Facts**

The facts of this case are straightforward. Prior to April 10, 2002, Plaintiff applied for a loan from Ameriquest that was secured by a mortgage on his home at 7249 South Princeton in Chicago, Illinois. Pl. SOF ¶¶ 2, 10. Ameriquest closed that loan on April 12, 2002. Pl. SOF ¶ 12. At the closing, Plaintiff received several documents including a Truth in Lending Act ("TILA") Disclosure Statement. Pl. SOF ¶ 13. The TILA Disclosure Statement stated that "payments shall be due beginning" "6/1/2002," it listed the number of payments (360), and the due date of the final payment (5/1/2032). Pl. SOF ¶ 16. The TILA Disclosure Statement did not "expressly state," "in words," that the loan payments were due "monthly."[2] Pl. SOF ¶ 17. The TILA Disclosure Statement did not list the due date of each and every payment under the loan.[3] Pl. SOF ¶ 18. After Ameriquest closed the loan, it sold or assigned the loan to Deutsche Bank. Pl. SOF ¶ 19. The servicing rights to Plaintiff's loan were transferred or assigned to AMC. Pl. SOF ¶ 20.

On January 18, 2005 Plaintiff's Counsel sent a letter to Ameriquest indicating Plaintiff's intent to rescind the loan for Defendant's alleged violations of the TILA.[4] Pl. SOF ¶ 21.

---

[2] Defendant denies this fact but an examination of the document referenced in Pl. SOF ¶17 (Exhibit D to the Amended Complaint) provides no basis for Defendant's denial. While it may be a reasonable assumption, based on the TILA Disclosure Statement, that payments were due monthly, the Disclosure Statement did not "expressly" "in words" include the word "monthly." See *Hamm*, 506 F.3d 525; *Malec*, 191 F.R.D at 584.

[3] Defendants deny this fact for the same reason as the previous fact, and the Court rejects the denial for the same reason. See *Hamm*, 506 F.3d 525; *Malec*, 191 F.R.D. at 584.

[4] Defendant admits that "Plaintiff's counsel sent a letter to Argent Mortgage Company." However, the document referenced in Plaintiff's SOF ¶21 (Pl. SOF, Appendix K) indicates that it was addressed to Ameriquest Mortgage Company. See *Malec*, 191 F.R.D. at 584

Although Plaintiff refinanced the mortgage at issue, the original loan was never rescinded.[5] Pl. SOF ¶¶ 23, 24.

## II. Analysis

### A. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley,* 359 F.3d at 928. To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

---

[5] In Response to Pl. SOF ¶24, Defendant responds "Admitted that Plaintiff paid off his loan subsequent to the filing of his lawsuit." (Def. Resp. SOF ¶24). As explained below, it is irrelevant to the disposition of this case whether the loan was "paid off" or "refinanced."

### B. Motion to Strike Portions of Plaintiff's Renewed Motion for Summary Judgment

Defendants have moved to strike certain portions of Plaintiff's renewed motion for summary judgment. Those portions include terms used by Plaintiff to describe Defendants, reports issued by third parties that Plaintiff referenced in the memorandum in support of this motion and included in the appendices, and "facts" included in Plaintiff's motion that were not included in his statement of undisputed material facts. As noted above, LR 56.1 requires the parties to include statements of *material* fact. In accordance with that rule, the Court has ignored any facts included in Plaintiff's statement of facts that are not material to the disposition of this motion. In addition, this opinion will not refer to Defendants using any terms employed by Plaintiff in his summary judgment motion that Defendants found objectionable.

To the extent Defendants seek a formal striking of portions of Plaintiff's motion for summary judgment, Defendant's motion is denied as moot. However, the Court's decision not to consider the portions of Plaintiff's motion, memoranda, and appendices that Defendants found objectionable essentially provides Defendants with all the relief that they seek.

### C. *Hamm v. Ameriquest*

TILA imposes upon lenders, among other obligations, an explicit obligation to include "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments," in their Disclosure Statements to borrowers. 15 U.S.C. § 1638(a)(6); see also 12 C.F.R. § 226.18(g)(1). Defendants concede in their response to Plaintiff's renewed motion for summary judgment that under *Hamm*, "a Truth in Lending Act Disclosure Statement which disclosed the date of the first loan payment, the date of the last loan payment, and the number of total payments due failed to satisfy the TILA requirement to disclose the period of payments scheduled." Defendants further concede that Plaintiff in the present action received a TILA

disclosure that provided just such information. Therefore, Defendants concede that Plaintiff received a TILA disclosure that violated the statute and that "the violation was apparent on the face of the disclosure statement." Def. Supp. Br. [132] at 4.

### D. AMC Mortgage Services, Inc.

Defendant AMC argues that as a "servicer" of Plaintiff's loan, TILA does not allow a judgment for rescission or statutory damages against it. A "servicer" is not generally liable for rescission or other damages. See *Payton v. New Century Mortgage Corp.*, 2003 WL 22349118 (N.D. Ill. Oct. 14, 2003). While assignees of loans may be liable for TILA violations, the statute draws a distinction between mere servicers of loans and assignees. See 15 U.S.C. § 1641(f)(1). A servicer may be treated as an assignee only if the servicer is or was the owner of the obligation. See *id*. However, a servicer is not treated as an owner on the "basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan" and "making the payments of principal and interest * * * as may be required." 12 U.S.C. § 2605(2), (3) (cross-referenced in 15 U.S.C. § 1641(f)(3)).

Plaintiff's statement of facts alleges, and Defendant admits, that "the servicing rights to Plaintiff's loan were transferred or assigned to AMC." Despite use of the term "assigned," it is clear when contrasted with the description of Deutsche Bank's role in the Plaintiff's Statements of Fact, that even Plaintiff was aware of AMC's limited function. Plaintiffs uncontested facts state that Ameriquest "sold or assigned the loan" to Deutsche Bank. When viewed together, Plaintiff himself has set out the delineation between the "servicing" done by AMC and the

assignment of the loan itself to Deutsche Bank. There is nothing that would support treating AMC as anything other than a "servicer".

Neither of the exceptions to the general rule that servicers of loans are not liable for TILA violations applies here. The "owner of the obligation" exception does not apply because AMC acted solely in an administrative role. See 15 U.S.C. § 1641(f)(1), (2); *Payton*, 2003 WL 22349118, at *5. The other potential exception may come into play when the servicer possesses or possessed an interest in the loan. *Conner v. Moss, Codilis, Stawiarski Morris, Schneider & Prior, LLP*, 2003 WL 21267093 (N.D. Ill. June 2, 2003). That interest must be separate from the interest that all servicers possess simply by providing their role in the administration of the loan, so that the exception does not swallow the rule. No such interest is alleged here. While some courts have allowed servicer defendants to remain in the case under the theory they are necessary parties under Fed. R. Civ. P. 19, the reasoning behind those decisions extends only to current servicers for rescission purposes. See *Bills v. BNC Mortgage, Inc.*, 502 F. Supp. 2d 773, 775 (N.D. Ill. 2007). But here the loan no longer is being serviced by AMC.

In sum, because AMC's role in the transaction was as a servicer only and none of the exceptions permitting liability to a servicer applies Plaintiff's motion for summary judgment against AMC must be denied.[6]

### E. Remedies Against Ameriquest and/or Deutsche Bank

Having established that the disclosures provided by Ameriquest to Plaintiff violated the TILA, the question of available remedies remains. TILA's civil liability provisions, relevant to the present facts, state that a creditor who fails to comply with 15 U.S.C. § 1635 is liable for (i)

---

[6] Defendants state in Supplemental Response Pursuant to the Court's July 14, 2008 Order that "the parties agree that this Court cannot enter any judgment against AMC Mortgage Services."

"not less than $400 or greater than $4,000" in statutory damages[7] (15 U.S.C. § 1640(a)(2)(A)(iii)) and (ii) "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under § 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court" (15 U.S.C. § 1640(a)(3)). The TILA also provides, under certain circumstances, the opportunity to rescind the transaction. If rescission is proper, a debtor is entitled to the return of money or property. See 15 U.S.C. § 1635(b). While Ameriquest has conceded its liability for statutory damages and costs and attorney's fees for the failure to rescind the transaction, Defendants dispute whether rescission is a proper remedy at all because the loan at issue has been paid off and whether Plaintiff has any remedies against Deutsche Bank.

1.  **Rescission**

The TILA was created "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). When lenders violate the TILA, Congress provided consumers the right to rescind a consumer credit transaction in which a security interest is retained in the consumer's home. 15 U.S.C. § 1635(a). The right to rescind generally extends until the third business day after the later of the: (i) closing of the transaction or (ii) the delivery of the information and rescission forms together with the statements of

---

[7] At the time of the parties' initial briefing, the pertinent statute provided that "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 (right of rescission) of this title * * * is liable * * * in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000." 15 U.S.C. § 1640(a)(2)(A)(iii). However, Section 1640(a)(2)(iii) was amended effective July 30, 2008, to double the minimum and maximum amounts of statutory damages. The relevant language now states that "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling," the creditor is liable in an amount "not less than $400 or greater than $4,000."

material disclosures.  *Id*.  However, if the creditor fails to provide the required material disclosures, the right to rescind extends until three years after consummation, upon transfer of all of the consumer's interest in the property, or upon the sale of the property, whichever appears first.  15 U.S.C. § 1635(f)(3); 12 C.F.R. § 226.23(a)(3)[8].

Defendants concede that the TILA disclosure provided to Hubbard failed to properly include the payment periods and that such information is "material" under the implementing regulations of TILA.  See 12 C.F.R. § 226.23(a)(3) n.48.  Therefore, Plaintiff had three years in which to rescind the credit transaction at issue.  The loan was closed on April 12, 2002, and notice of rescission was provided to Ameriquest within the three year window, on January 18, 2005.  Despite timely notice to Ameriquest, Defendants make two principal arguments to limit their liabilities: (i) by refinancing the loan, rescission is no longer possible as to either defendant; and (ii) even if rescission is still possible generally, Deutsche Bank cannot be held liable because it did not receive notice of the rescission request within the three year window.  Those issues will be discussed in turn.

          **a.**       **Rescission as to Ameriquest**

While the parties quibble as to whether the loan at issue has been "refinanced" or "paid off," it is undisputed that the Defendants have released the mortgage securing the loan.  Regardless of the terminology chosen by the parties, the Seventh Circuit has held a right of rescission exists in this situation.  See *Handy v. Anchor*, 464 F.3d 760 (7th Cir. 2006).  *Handy* followed an opinion from the Sixth Circuit in which the court construed the TILA and its implementing regulations to encompass a right to rescind the transaction itself and not just the security interest.  See *Handy*, 464 F.3d at 765 (quoting *Barrett v. JP Morgan Chase Bank, N.A.*,

---

[8] TILA's implementing regulations, 12 C.F.R. § 226 *et seq.*, known as "Regulation Z" are promulgated by the Federal Reserve Board.

445 F.3d 874, 878 (6th Cir. 2006)). Regulation Z enumerates two specific ways to extinguish a borrower's right to rescind: (1) complete transfer of interest in the property or (2) sale of the property. See 12 C.F.R. § 226.23(a)(3). "Nowhere do[es] the legislation or regulations add that the act of refinancing an existing loan transaction by itself cuts off the right of rescission." *Handy*, 464 F.3d at 765 (quoting *Barrett*, 445 F.3d at 878). Based on this plain reading of the statute, the right of rescission outlives the refinancing of the loan. Therefore, "the remedies associated with rescission remain available even after the subject loan has been paid off." *Handy*, 464 F.3d at 765. That outcome, *Barrett* and *Handy* agreed, prevents lenders from insulating themselves from responsibility for their noncompliance. See *Handy*, 464 F.3d at 766 (quoting *Barrett*, 445 F.3d at 879).

The fact that the loan has been refinanced is the only defense that Ameriquest raised to its liability for rescission. Since Seventh Circuit precedent requires the Court to reject that argument, Plaintiff was entitled to rescission and Ameriquest must honor all of Plaintiff's rescission remedies and pay the statutory damages, costs, and attorney's fees that it concedes are its responsibility.

### b. Rescission as to Deutsche Bank

Although the right to rescind outlives repayment, Deutsche Bank still maintains that it cannot be liable for rescission because Plaintiff did not give notice of its request for rescission to *Deutsche Bank* as well within the three years allowed under Section 1635. Although Plaintiff plainly gave timely notice to Ameriquest, it appears from the record that Deutsche Bank first received notice of Plaintiff's intent to rescind the loan when it was added as a party to this lawsuit in Plaintiff's Amended Complaint.[9] The question raised by Deutsche Bank's argument is whether Plaintiff's timely notice to the original lender is sufficient to effectuate rescission as to

---

[9] The Summons from the Amended Complaint was returned executed on October 26, 2005.

assignees who did not receive timely notice. Upon examination of the statutory language, its implementing regulations, the pertinent case law, and the role that rescission plays within the TILA scheme, the Court concludes that Hubbard's timely rescission request as to Ameriquest is equally effective against Deutsche Bank as assignee, despite lack of notice to Deutsche Bank within the three year window.

The TILA and Regulation Z lay out the steps that an obligor must take to invoke its right of rescission. Significantly, both the statute and the regulation only require notification to the "creditor." 15 U.S.C. § 1635(a) ("[T]he obligor shall have the right to rescind the transaction * * * by notifying the creditor * * * of his intention to do so"); 12 C.F.R. § 226.23(a)(2) ("[T]he consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication"). The use of "creditor" is significant, because that word has a defined meaning under TILA. A "creditor" "refers only to a person who * * * is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the indebtedness * * *." 15 U.S.C. § 1602(f). Under the plain language of the statute, Hubbard fulfilled his obligation to rescind when he notified Ameriquest, "the "creditor," that he wanted to rescind.

The use of the word "transaction" in the statute provides further supports for the Court's conclusion that rescission is effective to all subsequent assignees upon timely notice to the "creditor." See 15 U.S.C. § 1635(a) ("The obligor shall have the right to rescind the *transaction* * * *.") (emphasis added). As the Seventh Circuit recognized in *Handy*, rescission terminates the entire *transaction* and thus "encompasses a right to return to the status quo that existed before the loan." *Handy*, 464 F.3d at 765 (quoting *Barrett* 445 F.3d at 878). Accordingly, upon timely invocation of the right of rescission, a borrower must be put back in the position that it occupied prior to the loan agreement. *Handy*, 464 F.3d at 765 (quoting *Barrett*, 445 F.3d at 877).

Applying these principles, when Plaintiff notified Ameriquest that he wished to exercise his right to rescission, Plaintiff terminated the transaction itself, and was entitled to return to the status quo prior to the loan. The only way to effectuate the statutory right to be returned to the status quo is to involve the original lender and all subsequent assignees – parties that would not have been involved in the transaction or received any of the obligor's interest payments were it not for the original loan. Therefore, Plaintiff must return everything that he received on the closing date (to the extent that it has not already been returned) and Ameriquest and Deutsche Bank must release any security interest they might have asserted. See *Handy*, 464 F.3d at 766. Because the original loan has been refinanced, Plaintiff has no principal to return and Defendants have no security interest to release. Finally, Defendants forfeit their right to collect interest upon rescission and therefore must reimburse Plaintiff for any interest or other finance charges that he paid wile the loan was outstanding. See *Handy*, 464 F.3d at 766; 15 U.S.C. § 1635(b). To the extent that interest payments were made to Deutsche Bank as assignee, Deutsche Bank must participate in the rescission process in order to achieve the statutory goal of returning all parties to the position that existed prior to the transaction.

The statutory language specifically addressing assignees and rescission is fully consistent with this outcome. It states "[a]ny consumer who has a right to rescind a transaction under section 1635 of this title may rescind the transaction against any assignee of the obligation." 15 U.S.C. § 1641(c). Reading that provision in light of the text, structure, and purpose of the TILA as a whole and the Seventh Circuit's relevant precedents, the Court concludes that Section 1641(c) simply clarifies that assignees may not hide behind an assignment and that as long as the borrower has properly rescinded the transaction by giving notice to the "creditor" within the three year statutory period, the rescission of the transaction is effective against any assignee.

This reading also supports the notion that assignees can be necessary parties in TILA litigation, for they may be essential to fully unwinding the "transaction" as required under *Handy*.

Defendants contend, relying principally on a bankruptcy court decision, *In re Meyer*, 379 B.R. 529 (Bankr. E.D. Pa. 2007), that the three year statute or repose in the TILA bars any action against Deutsche Bank because Plaintiff did not give notice of the rescission request to Deutsche Bank within that time frame. However, given the Seventh Circuit's determination that rescission takes place on a transactional basis, this Court cannot accept the view that the notice given to Ameriquest was not sufficient to effectuate rescission as to Deutsche Bank. By giving notice to Ameriquest within the three year period, Plaintiff timely exercised his unitary rights to "rescind the transaction" (15 U.S.C. § 1635(a)) and to "return to the status quo that existed before the loan." *Hardy*, 464 F.3d at 765.[10]

In sum, to properly effectuate Plaintiff's timely invoked right to rescission, Ameriquest and Deutsche Bank each must determine the amounts of interest and fees that they received from Plaintiff while the loan was outstanding and reimburse Plaintiff in those amounts. See *Handy*, 464 F.3d at 766 ("Given the statute, [Defendant] forfeits its right to collect interest, and so it must reimburse [Plaintiff] for any interest paid while the loan was outstanding"); see also

---

[10] Plaintiff also complains that he was hampered in his ability even to learn that Deutsche Bank was the current holder of the loan by Ameriquest's refusal to respond to Plaintiff's Interrogatory Requests in a timely fashion. Specifically, Plaintiff asked Ameriquest to "[s]tate whether defendant owns all legal and beneficial interests in plaintiff's loan. If not, identify each other person or entity who owns or claims to own any interest in plaintiff's loan and describe their claimed interest." Plaintiff argues that Ameriquest's refusal to identify Deutsche Bank in response to that interrogatory deprived Plaintiff of any opportunity to request rescission of Deutsche Bank within the three year period, as Defendants contend Plaintiff was required to do. The Court need not explore that dispute any further in view of the conclusion that, under the statute, Plaintiff only was required to give notice to the "creditor" – Ameriquest – within the three year period in order to invoke the right to rescind the transaction as a whole, including as to assignees such as Deutsche Bank. By requiring notice only to the "creditor," Congress prevented lenders from hiding behind assignments to avoid rescission and protected borrowers from the need to obtain information on, and to provide notice to, any number of assignees to accomplish Congress' objective of making borrowers whole after terminating the transaction.

*Miranda v. Universal Financial Group, Inc.*, 459 F. Supp. 2d 760, 765 (N.D. Ill. 2006) ("Under § 1635(b), a borrower who exercises the right to rescind is entitled to the return of any payments made on the loan"). Only then can the parties be returned to the status quo that existed before the loan was made.

### 2. Statutory Damages, Costs, and Attorney's Fees for Failure to Rescind

Plaintiff acknowledges that he is not entitled to statutory damages for the underlying TILA disclosure violation. Ameriquest admits that it is liable for statutory damages, as well as costs and attorney's fees,[11] as a result of its failure to rescind the transaction when requested to do so by Plaintiff. Def. Supp. Br. at 3, 6. The remaining question is whether such liability also may be imposed on Deutsche Bank.

The question of assignee liability for statutory damages, costs, and attorney's fees has arisen in several recent cases in this district. See, *e.g.*, *Lippner v. Deutsche Bank National Trust Co.*, 544 F. Supp. 2d 695 (N.D. Ill. 2008); *Ware v. IndyMac Bank, FSB*, 534 F. Supp. 2d 835 (N.D. Ill. 2008); *Bills v. BNC Mortgage, Inc.*, 502 F. Supp. 2d 773 (N.D. Ill. 2007); *Walker v. Gateway Financial Corp.*, 286 F. Supp. 2d 965 (N.D. Ill. 2003); *Payton v. New Century Mortgage Corp.*, 2003 WL 22349118 (N.D. Ill. Oct. 14, 2003); *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d 910 (N.D. Ill. 2002). Having reviewed those cases thoroughly, the Court discerns a reasonably clear demarcation in which assignees generally have not been on the hook for statutory damages, costs, or attorney's fees where the underlying TILA violation was not apparent on the face of the document in question (see *Bills*, 502 F. Supp. 2d at 776-77; *Walker*, 286 F. Supp. 2d at 968-69), but have been found liable as to those remedies where the

---

[11] "Any creditor who fails to comply with any requirement [under TILA] * * * is liable * * * in the case of any successful action to enforce the foregoing liability * * * [for] the costs of the action, together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1640(a)(3).

underlying violation was facially apparent (see *Lippner*, 544 F. Supp. 2d at 704).[12] The parties have not cited, nor has the Court's research located, a case in this district in which a court has held that an assignee is *not* liable for statutory damages, costs, and attorney's fees for failure to rescind when the underlying TILA violation was *apparent on the face* of the offending document, as the parties have agreed is the case here.

The Court concludes that the distinction drawn by other courts in this district between TILA violations that are clear on the face of the underlying document and those that are not facially apparent is sensible and comports with the statutory scheme. As in *Lippner*, this Court concludes "[a]fter taking the entire statutory scheme of TILA into consideration," that "an assignee of a mortgage should be held liable for statutory damages and attorney's fees for failing to honor a demand for rescission when the underlying TILA violation is apparent on its face," because in those circumstances "the assignee has fair notice of the underlying TILA violation." 544 F. Supp. 2d at 704-05.

## III.    Conclusion

Based on the foregoing analysis, the Court denies Plaintiff's motion for summary judgment [103] as to AMC and grants Plaintiff's motion for summary judgment [103] as to Ameriquest and Deutsche Bank, finding both Ameriquest and Deutsche Bank liable for rescission, statutory damages, and costs and attorneys' fees. Plaintiff is given until October 14, 2008, in which to submit supplemental briefing, consistent with this decision, on the appropriate damage calculations and how to properly unwind the transaction for rescission purposes. Ameriquest and Deutsche Bank will have until October 25, 2008, in which to respond to

---

[12] In *Payton*, the court concluded that statutory damages could not be imposed on the assignee because the violation was not apparent on its face, but that an award of attorney's fees against the assignee was appropriate because the plaintiff had brought a successful action for rescission. 2003 WL 22349118, at *7-*8.

Plaintiff's calculation of damages and briefing on rescission. Finally, the Court denies Defendants' motion to strike portions of Plaintiff's renewed motion for summary judgment [113] as moot in light of the discussion above.

Dated: September 30, 2008      _____
                               Robert M. Dow, Jr.
                               United States District Court